NEHI BOTTLING COMPANY OF ELLISVILLE, et al. *v.*
JEFFERSON, ADMR.

No. 39887          January 23, 1956          84 So. 2d 684

588

*M. M. Roberts,* Hattiesburg; *E. F. Coleman,* Purvis, for appellants.

590

*Lester Clark,* Hattiesburg; *William E. Andrews, Jr.,* Purvis, for appellees.

Ethridge, J.

This is an appeal from a verdict and judgment of the Circuit Court of Lamar County in the amount of $7,500 in favor of appellee, administrator of deceased's estate, against appellants Nehi Bottling Company of Ellisville, a corporation, and Claude Davis, driver of the company's truck. Since this case must be reversed and remanded for a new trial, primarily because of erroneous instructions and also for certain errors in the admission of testimony, the statement of facts which the jury was authorized to find will be abbreviated but sufficient to state the background and reasons for this decision.

Rushell Jefferson, a little Negro girl of the age of sixteen months, was the daughter of appellee administrator, John Jefferson, and his wife Nancy. She was

run over and killed by appellant company's truck, driven by Davis, early in the afternoon of May 20, 1954, in the Town of Lumberton. Bay Street runs north and south, and on the east side of it is situated the Jefferson home. It is close to this narrow street. On the front of that lot is a fence with a gate, which when closed leaves a small opening between it and the post of the fence. Bay Street has a dirt and gravel surface and is graded to a width of twelve feet. On the west side of this street, across from the Jefferson home, is a small store owned and operated by the Jeffersons. The store sits back from the street more than sixteen feet, thus allowing room for a car or truck to park in front of the store and off of the graded portion of the street. Fifteen feet south of the store is Love Avenue, a street fifteen feet in width. There is a parking area of about fifteen feet north of Love Avenue and south of the store building, which has a door also on that side. Nancy and John, at the time of the accident in question, had four small children ranging in ages from sixteen months to seven years, who regularly played in their front yard. Davis had been making deliveries of bottled drinks to the Jefferson store across the street twice a week for eight months, and he knew that these children played there, and that they also came across the street on numerous occasions to the store.

Shortly after two o'clock that afternoon, Davis drove the truck north on Bay Street and pulled it over on the left or west side of the street in front of the Jefferson store for the purpose of making a delivery of a case of bottled drinks. Approximately three to four feet of the right-hand side of the truck was jutting out on the graded portion of the west side of the street. When the truck drove up, Nancy left her house where the children were playing, closed the gate, and went across to the store to receive the delivery. After she had paid Davis for the drinks, he walked out to the truck, placed

an empty case of bottles in the rear, got in the cab, and pulled off to the right and north of the street without looking to see whether anyone was in the street and to the right of his truck. He had driven only a short distance, perhaps not over 100 to 200 feet, before Nancy came to the door and saw Rushell's body near the center line of the street with her head and chest crushed on one side. There had been no other cars traversing this street during the period between her leaving the child in the yard and her coming back to the door and seeing the child in the street and the truck leaving.

H. H. Slade, town marshal, went to the scene and found a pool of blood in the street about six inches to the west of the center line. He asked Davis, who in the meantime had been notified of the child's death and had returned to the scene, where the truck had been standing. Davis showed him the place, and the truck's tracks. They followed the tracks out to where the pool of blood was located. At that point there was a blank space about fourteen inches in diameter where no tracks showed. The tracks then went north on the street.

The only witness for defendant was Davis. He stated that when he came out of the store he got in his truck and drove off, but that he looked at the rear of the truck; and that when he came out of the store he could see under the truck. He got in on the driver's side. He admitted that when he drove up there were a lot of children running around and that he "didn't pay it any attention." He also said that he looked, but the jury was amply warranted in believing that he did not look carefully enough, that when Davis drove off he failed to keep a proper lookout for children at this particular locality, when he knew that they were playing there, and that he failed to look to the right and on the east side of the road as he pulled off. Moreover, photographs in the record warranted the jury in concluding that even if he had looked toward the bottom

part of the truck as he walked out of the store, he could not have adequately seen whether there was a child on the other side. So the jury was justified in finding that Rushell had crawled through the gate, that Davis failed to keep a proper lookout for children in this locality and under these particular circumstances, and that his negligence in this respect was the proximate cause of the child's death. Moreover, the great weight of the evidence supports the finding that appellant's truck ran over Rushell as it pulled out into the street driving north. Gordon v. Lee, 208 Miss. 21, 43 So. 2d 665 (1949).

■■ Appellants complain about the use by appellee's counsel in his closing argument of a chart on a blackboard outlining argumentatively appellee's claims as to the damages which the jury could consider. However, this previously has been decided adversely to appellant's contention. 4-County Electric Power Ass'n v. Clardy, 73 So. 2d 144 (Miss. 1954); Sandifer Oil Company, Inc. v. Dew, 71 So. 2d 752 (Miss. 1954).

■■ It was error for the trial court to admit testimony for plaintiff as to other accidents in which Davis allegedly was involved. This could have been admissible to obviate the necessity of proving agency, under the rule that where one entrusts a vehicle to one known to be a reckless driver, the former is responsible for the acts of the driver, although the driver was not about the owner's business. But in this case appellants' answer admitted that Davis was within the scope of his employment at the time and place in question, and Davis so testified.

■■ Several instructions were granted appellee-plaintiff by the trial court which we think constituted reversible error. Plaintiff's instruction No. 4 told the jury in substance that if it believed there was a large parking space on the south side of the store and that the failure of Davis to park his truck therein was negligence, and if said negligence was the proximate cause

of the death, then it could find for plaintiff. Of course there probably would have been no accident if the truck had been parked on the south side, but the failure to do that was not negligence. The negligence must be that which was done or omitted where defendant's truck was parked. The question is not whether he should have been somewhere else. This instruction authorized the jury to return a verdict for plaintiff even though it found that Davis was guilty of no negligence in doing what he did, provided the jury thought it was negligence not to have parked to the south of the store. So manifestly it was erroneous.

■■ Plaintiff's instructions Nos. 2, 7 and 9 failed to give the jury any guide as to what specific acts or omissions within the pleadings and proof were sufficient to constitute actionable negligence. For example, plaintiff's instruction No. 7 provided: ''The Court instructs the jury that you do not have to know that the child was crushed by the Nehi Bottling Company truck but if you believe by a preponderance of the evidence that the child was killed by the Nehi truck because of the negligence of the defendants, if any, and if you believe by a preponderance of the evidence that the negligence of the defendants, if any, was the proximate cause of the child's death, then it is your sworn duty to find for the plaintiff in an amount that will fully compensate for all damages.''

This type of instruction has been condemned in many cases. In Meridian City Lines v. Baker, 206 Miss. 58, 83, 39 So. 2d 541 (1949), this comment was made: ''The quoted instruction simply told the jury, in general terms, that it was the duty of the bus line to use reasonable care and caution in the operation of its buses so as to avoid injury to others, and it authorized the jury to find against the bus line if it believed from a preponderance of the evidence that a failure to exercise reasonable care proximately caused or contributed to the plaintiff's in-

jury. By this instruction the jury was left to grope in the darkness, without any light to guide them, on the question of negligence of the bus line, and if in the nebulous maze of the wilderness the jury should grasp any act which it felt constituted a lack of reasonable care, it was authorized to adjudge the bus line guilty of negligence. It has been repeatedly held by this Court that in negligence cases the instructions must confine the deliberation of the jury to the ground or grounds of negligence alleged and which are supported by substantial proof.''

The criticism is applicable to these three instructions, Nos. 2, 7 and 9. Nor did any instructions granted appellants cure those errors. It is true that plaintiff's instructions 6 and 10 were based on a failure to keep a proper lookout, but the three condemned instructions were not adequately related to the failure to keep a proper lookout, which was in fact the principal basis of this suit, along with the parking on the wrong side of the road. They were further obfuscated by the giving of plaintiff's instruction No. 4, discussed above, which erroneously submitted a negligence issue upon appellants' failure to park on the south side of the store.

Plaintiff's instruction No. 3 was error, since there was no evidence to sustain a charge or finding that Davis was guilty of ''a willful or a wanton disregard for the safety of persons . . .''

Plaintiff's instruction No. 5 gives in the latter part of it a proper charge as to the failure to keep a lookout for small children, but there is no evidence that the truck ''partially obstructed passage in said street'', since the testimony shows that during the period in question there was no traffic to obstruct. The first part of this instruction is apparently incomplete, and is confusing.

Appellants complain of the admission of the verdict of the coroner's jury. Although the verdict was

not admissible, no objection was made to it, so no complaint can be made of that. But on a new trial, it should not be admitted in evidence. It recited "that Rushell Jefferson was crushed to death, probably by a Nehi Bottling Company truck driven by Claude Davis and that it was an accident." The object of a coroner's proceeding is to furnish prompt information which may guide officers in apprehending and prosecuting those who appear to have been connected with a supposed homicide, and, strictly speaking, it has no legal effect, being purely hearsay in nature. Blackwell v. State, 166 Miss. 524, 146 So. 628 (1933), discusses the reasons for its incompetency in a criminal case. See 26 Am. Jur., Homicide, Sec. 453. These objections are likewise applicable in a civil case of the present type. The general rule precludes the admission of a coroner's verdict in evidence in a civil action. 20 Am. Jur., Evidence, Sec. 997; 29 Am. Jur., Insurance, Secs. 1490, 1491. Supreme Lodge Knight of Honor v. Fletcher, 778 Miss. 377, 29 So. 523 (1900), held that in an action on a life insurance policy which expressly required the certificate of the coroner to be attached to the proof of death, the finding of the coroner's jury was admissible and prima facie evidence of the cause of death. However, that decision was based upon the peculiar terms of the bylaws and policy of the insurer, and its application is confined to the particular facts there involved. This limitation upon that case was recognized in the concurrent case of Fletcher v. Sovereign Camp Woodmen of the World, 32 So. 923 (Miss. 1902), where it was held that "the verdict of the coroner's jury was incompetent in this case as evidence of the cause of death." See also Columbian Mutual Life Assurance Society v. Harrington, 139 Miss. 826, 848-849, 104 So. 297, 301 (1925); Anno., 28 A. L. R. 2d 352, 365-367 (1953). Of course the testimony of the members of the jury as to admissions by Davis and what they ob-

served at the scene was proper. The 1922 Town Ordinance was properly admitted in evidence.

We find no merit in any of the other assignments of error, but for the above stated serious errors in the giving of certain instructions to plaintiff, and the admission of testimony as to prior accidents, the case must be and it is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

*Roberds,* P. J., *Lee, Arrington* and *Gillespie,* JJ., concur.