UNITED RENTALS HIGHWAY TECHNOLOGIES, INC., A DELAWARE CORPORATION, APPELLANT, *v.* WELLS CARGO, INC., A NEVADA CORPORATION, RESPONDENT.

No. 55331

UNITED RENTALS HIGHWAY TECHNOLOGIES, A DELAWARE CORPORATION, APPELLANT, *v.* WELLS CARGO, INC., A NEVADA CORPORATION, RESPONDENT.

No. 56701

UNITED RENTALS HIGHWAY TECHNOLOGIES, A DELAWARE CORPORATION, APPELLANT, *v.* WELLS CARGO, INC., A NEVADA CORPORATION, RESPONDENT.

No. 56923

December 6, 2012                    289 P.3d 221

[Rehearing denied February 5, 2013]

*Alverson, Taylor, Mortensen & Sanders* and *Nathan R. Reinmiller* and *Sabrina G. Mansanas*, Las Vegas, for Appellant.

*Hall, Jaffe & Clayton, LLP*, and *Steven T. Jaffe, Ashlie L. Surur*, and *Phil W. Su*, Las Vegas, for Respondent.

Before SAITTA, PICKERING and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In these appeals, we consider what effect specific contract language has on an indemnitor's duty to indemnify and defend an indemnitee in a personal injury action, where that language provides that indemnification will occur "to the extent" that any injury or damage is "caused" by the indemnitor.

Appellant United Rentals Highway Technologies, Inc., contracted to provide traffic control on a road improvement project coordinated and facilitated by respondent Wells Cargo, Inc. The parties' contract required United Rentals to indemnify, defend, and hold harmless Wells Cargo to the extent that United Rentals caused any injury or damage. A woman was injured in connection with the road improvement project and sued United Rentals, Wells Cargo, and other defendants for negligence. Wells Cargo sought indemnification and defense from United Rentals, but United Rentals consistently denied that it was obligated to provide indemnification and defense.

We conclude that a plain reading of the contractual indemnity language imposes a causal limitation on United Rentals' duty to indemnify and defend Wells Cargo. Because the jury found that United Rentals did not proximately cause the underlying accident, we conclude that United Rentals did not have a duty to indemnify or defend Wells Cargo, and we reverse the judgment of the district court.[1]

---

[1]Causation is an element of the tort of negligence. *See Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). Here, the jury expressly found that United Rentals' negligence (presumably, its failure to exercise the requisite standard of care) was not the proximate cause of the accident. Thus, our analysis is premised on this finding by the jury.

## FACTS AND PROCEDURAL HISTORY

In 2004, Wells Cargo entered into a contract with project owner Howard Hughes Corporation to perform work as a general contractor on a road improvement project. Shortly after, Wells Cargo and United Rentals executed a contract whereby United Rentals would act as a subcontractor on the project to assist with traffic control. The contract, which was drafted by Wells Cargo, contained the following indemnification provision relevant to this appeal:

> The Subcontractor . . . shall indemnify, defend and hold the General Contractor [and] Owner . . . harmless from and against all claims, losses, costs and damages, including but not limited to attorneys' fees, pertaining or allegedly pertaining to the performance of the Subcontract and involving personal injury . . . or damage to tangible property . . . , including loss of use of property resulting therefrom, economic loss, or other claims or damages, *to the extent caused* in whole or in part by the negligent acts or omissions or other fault of the Subcontractor . . . . This indemnification agreement is binding on the Subcontractor . . . to the fullest extent permitted by law, regardless of whether any or all of the persons and entities indemnified hereunder are responsible in part for the claims, damages, losses or expenses for which the Subcontractor . . . is obligated to provide indemnification.

(Emphasis added.) Further, the contract required that Wells Cargo be named as an additional insured on certain liability insurance policies procured by United Rentals.

During construction of the road project, Antonette Kodera was driving her motorcycle when she allegedly hit an unmarked bump in the road, lost control of the motorcycle, and sustained serious injuries. Kodera filed a complaint against multiple defendants, including Wells Cargo and Howard Hughes Corporation, alleging negligence. Wells Cargo and Howard Hughes Corporation each filed an answer denying liability. Kodera later amended her complaint to name additional defendants, including United Rentals. She alleged that Howard Hughes Corporation, Wells Cargo, United Rentals, and other defendants were negligent because the unmarked bump was dangerous, the defendants failed to provide appropriate warning of the bump's presence, and/or the defendants failed to remove the dangerous or hazardous condition that caused her injuries.

Soon after Kodera added United Rentals as a defendant, Wells Cargo tendered its defense to United Rentals and an insurance carrier for United Rentals. Both tenders allegedly went unanswered.

As a result, Wells Cargo filed an answer to Kodera's first amended complaint and cross-claimed against United Rentals for contribution, equitable indemnity, express or contractual indemnity, and breach of contract. United Rentals, who had already answered Kodera's complaint, answered the cross-claim denying liability.

Wells Cargo moved for partial summary judgment on its cross-claim for contractual indemnification. It argued that because Kodera's claims were at least in part based on United Rentals' negligent acts, United Rentals had a contractual duty to defend, indemnify, and hold harmless Wells Cargo and Howard Hughes Corporation. Relying on the contract's indemnification provision and the provision adding Wells Cargo to United Rentals' insurance policies, Wells Cargo argued that United Rentals was required to indemnify Wells Cargo and Howard Hughes Corporation even if Wells Cargo itself was found partially liable. United Rentals opposed the motion, arguing that the bump signage was not contemplated in the original indemnification contract, that Wells Cargo failed to demonstrate that United Rentals' conduct caused Kodera's accident, that insurance principles of indemnification did not apply, and that the indemnification provision did not clearly permit Wells Cargo to be indemnified for its own negligence.[2] Wells Cargo replied, arguing that the contract applied to all traffic control, that there was sufficient evidence that United Rentals caused the accident, and that any alleged concurrent negligence by Wells Cargo and Howard Hughes Corporation was immaterial to United Rentals' duties.

The district court ordered United Rentals to indemnify Wells Cargo and Howard Hughes Corporation unless Wells Cargo or Howard Hughes Corporation was determined to be solely negligent. Further, it concluded that United Rentals was "obligated to defend Wells Cargo and Howard Hughes Corporation [from the date of the first tender] . . . irrespective of any ultimate determination of liability, because the obligation to defend is not outcome driven." Thus, it ordered United Rentals to defend Wells Cargo and Howard Hughes Corporation throughout the entire lawsuit. It also ordered United Rentals to hold harmless Wells Cargo and Howard Hughes Corporation.

On the same day the district court entered its order, Wells Cargo, Howard Hughes Corporation, and codefendant the Nevada Department of Transportation (NDOT) again tendered their defenses to United Rentals. These defendants asked United Rentals to indemnify them "for any damages owed [to Kodera], irrespective

---

[2]United Rentals also separately filed a motion for partial summary judgment on Wells Cargo's cross-claim for indemnification, in which United Rentals asserted similar arguments to those made in opposition to Wells Cargo's motion for partial summary judgment. The district court denied the motion.

of allocations of fault and potential findings of sole negligence," to assume all of the current and the previous defense costs, and to waive its appellate rights against the tendering defendants. After allegedly not receiving a response from United Rentals, these defendants sought district court approval of a $1,000,000 settlement with Kodera, which was the policy limit of Wells Cargo's primary insurer. United Rentals opposed this motion, arguing that the settlement amount was not made in good faith and that it was grossly disproportionate to the settling defendants' share of damages. After a hearing, the district court granted the motion and permitted Wells Cargo, Howard Hughes Corporation, and NDOT to settle for $1,000,000.[3]

Kodera and United Rentals went to trial, and the jury returned a verdict in favor of United Rentals. Specifically, the jury found United Rentals was negligent, but that its negligence was not the proximate cause of the accident. The district court entered judgment on the jury verdict and awarded United Rentals its associated attorney fees and costs.

Notwithstanding the jury verdict, Wells Cargo filed a motion to enforce indemnification on behalf of the settling defendants, seeking reimbursement of the $1,000,000. It argued that the jury's finding of negligence on the part of United Rentals necessarily meant neither Wells Cargo nor Howard Hughes Corporation could be solely negligent, and thus, United Rentals was required to indemnify Wells Cargo and Howard Hughes Corporation. It also argued that United Rentals was bound by the settlement because it breached its duty to defend. United Rentals opposed the motion and filed another motion for summary judgment on Wells Cargo's cross-claim for indemnification, arguing again that its duties to indemnify and defend were contingent on a finding that the company itself caused Kodera's damages, which contingency was expressly negated by the jury when it found United Rentals' negligence was not the proximate cause of Kodera's injuries.

The district court concluded that because United Rentals knew about the $1,000,000 settlement and had an opportunity to defend against it, Wells Cargo only needed to show that United Rentals was *potentially* liable, and not actually liable, when Wells Cargo tendered its defense. Further, the district court reiterated its prior holding that because the settling defendants "demonstrated potential liability existed, their defense was seasonably tendered, and [United Rentals] was notified in reasonable fashion of the possibility of settlement and the negotiations," United Rentals had a duty to indemnify regardless of the ultimate outcome of the case. The district court's analysis of Wells Cargo's sole liability was lim-

---

[3]The settling defendants also requested to participate at trial as a condition of the settlement, but the district court denied their request.

ited to an interpretation that proof of same might be evidence to thwart a showing of potential liability, but would not act to relieve United Rentals of indemnification. The district court concluded that United Rentals "presented no evidence to suggest a lack of [its] potential liability under the contract," and thus, the court granted Wells Cargo's motion to enforce indemnification and denied United Rentals' countermotion for summary judgment.

Wells Cargo then filed a motion seeking attorney fees. After the parties briefed the issue and the district court held a hearing on the matter, the district court entered an order awarding Wells Cargo $424,782.87 in attorney fees. The district court subsequently entered an amended judgment in favor of Wells Cargo for $1,000,000 plus interest. United Rentals appealed from the orders and judgment in favor of Wells Cargo.[4]

## DISCUSSION

In these appeals, we interpret a contractual indemnification clause limiting the indemnitor's duty to indemnify and defend "to the extent" that any injury or damage is "caused" by the indemnitor.

The indemnification clause specifically provides that United Rentals shall indemnify Wells Cargo for claims, losses, and damages relating to personal injury or other claims or damages "to the extent caused in whole or in part by the negligent acts or omissions or other fault of [United Rentals]." We conclude that the strict construction of this indemnification language prohibits an interpretation that includes indemnity for Wells Cargo without a finding of United Rentals' causation. We further conclude that the district court's error in determining that United Rentals was required to indemnify Wells Cargo resulted in an unfair burden being cast onto a party that the jury found was not at fault. *See George L. Brown Ins. v. Star Ins. Co.*, 126 Nev. 316, 324, 237 P.3d 92, 97 (2010).

*Standard of review*

"The interpretation of an indemnity clause within a contract is a question of law, which this court will review de novo." *Reyburn Lawn v. Plaster Development Co.*, 127 Nev. 331, 339, 255 P.3d 268, 274 (2011). Additionally, United Rentals challenges the district court's orders granting summary judgment in favor of Wells Cargo and denying its own motion for summary judgment. "This court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

---

[4]Howard Hughes Corporation is not a party to this appeal.

"Summary judgment is appropriate . . . when the pleadings and other evidence on file demonstrate that no 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (alteration in original) (quoting NRCP 56(c)).

"Typically, '[c]ontractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work.' " *Reyburn*, 127 Nev. at 338, 255 P.3d at 274 (alteration in original) (quoting *Medallion Dev. v. Converse Consultants*, 113 Nev. 27, 33, 930 P.2d 115, 119 (1997), *superseded by statute on other grounds as stated in Doctors Company v. Vincent*, 120 Nev. 644, 654, 98 P.3d 681, 688 (2004)). "When the duty to indemnify arises from contractual language, it generally is not subject to equitable considerations; 'rather it is enforced in accordance with the terms of the contracting parties' agreement.' " *Id.* (quoting *Prince v. Pacific Gas & Elec. Co.*, 202 P.3d 1115, 1120 (Cal. 2009)).

Accordingly, a provision in a contract purporting to indemnify the indemnitee for the indemnitee's own negligence must be strictly construed. *See id.* at 340, 255 P.3d at 275 (stating this court "must strictly construe the indemnity clause's language").

*United Rentals' duty to indemnify Wells Cargo is limited to the extent United Rentals caused the damages*

As noted, the indemnification clause within the parties' contract provided that United Rentals shall indemnify Wells Cargo for claims, losses, and damages relating to personal injury or other claims or damages "to the extent caused in whole or in part by the negligent acts or omissions or other fault of [United Rentals]." United Rentals argues that under a plain reading of this contract language, United Rentals only has an obligation to indemnify Wells Cargo to the extent that it caused the underlying accident and related damages. We agree.

The effect of a "to the extent caused" contractual limitation appears to be an issue of first impression in Nevada. However, while the indemnity provision at issue in *Reyburn* was not identically worded to the provision at issue here, the holding in that case strongly suggests that, here, United Rentals' duty to indemnify Wells Cargo is limited to the extent that United Rentals actually caused the injury. 127 Nev. at 340-41, 255 P.3d at 275. Specifically, in *Reyburn*, this court concluded that because the indemnity provision did not explicitly indemnify the indemnitee against

its own negligence, and because this court strictly construed the indemnity clause, "there must be a showing of negligence on [the indemnitor's] part prior to triggering [the indemnitor's] duty to indemnify [the indemnitee]," *id.* at 340, and the indemnitee "may be indemnified only for damages associated with [the indemnitor's] negligence." *Id.* at 347-48, 255 P.3d at 279. Limiting United Rentals' duty to indemnify "to the extent" that it "caused" the accident or injury is also consistent with this court's refusal to " 'attempt to increase the legal obligations of the parties where the parties intentionally limited such obligations.' " *Griffin v. Old Republic Ins. Co.*, 122 Nev. 479, 483, 133 P.3d 251, 254 (2006) (quoting *Senteney v. Fire Ins. Exchange*, 101 Nev. 654, 656, 707 P.2d 1149, 1150-51 (1985)).

Other courts examining contract language virtually identical to the provision at issue here have concluded that limiting a duty to indemnify "to the extent" that an injury is "caused" by the indemnitor requires a determination of the indemnitor's degree of fault and invokes the duty only to the extent that the indemnitor is negligent. In *Greer v. City of Philadelphia*, the Supreme Court of Pennsylvania interpreted a provision which provided for "indemnity from claims for damages 'only to the extent caused in whole or in part by negligent acts or omissions of the [indemnitor],' and 'regardless of whether or not such claim . . . [was] caused in part by a party indemnified hereunder.' " 795 A.2d 376, 379 (Pa. 2002). The court explained that "the 'to the extent' language . . . [was] in the plain text of the contract and clearly must be given effect." *Id.* at 380. Based on that language, that court concluded that the intent of the parties was to limit any indemnification to that portion of damages attributed to the negligence of the indemnitor and held that the indemnitor was not required to provide indemnification due to the negligence of an indemnitee. *Id.* at 379. Further, the court interpreted the provision "that the indemnity clause [would] apply 'regardless of whether or not such claim . . . [was] caused in part by a party indemnified hereunder' " as simply a clarification "that any contributory negligence by [the indemnitees would] not bar their indemnification for damages due to [the indemnitor's] negligence." *Id.* at 380. Thus, in construing the entire provision, the Pennsylvania court held that the "language . . . easily read to only indemnify [the indemnitees] for that portion of damages caused by the negligence of [the indemnitor]." *Id.* at 381.

The Court of Appeals of Arizona has also interpreted an indemnification provision containing an almost identical "to the extent caused" limitation. *MT Builders v. Fisher Roofing*, 197 P.3d 758, 764 (Ariz. Ct. App. 2008). The court there explained that the limiting "language create[d] what is known as a 'narrow form' of indemnification—the indemnitor's obligation only covers the indemnitee's losses to the extent caused by the indemnitor . . . ." *Id.*

at 765. As such, the court concluded that "to obtain indemnity, [the indemnitee] was required to prove the extent of [the indemnitor's] fault." *Id.*

Similarly, the Court of Appeals of Minnesota has examined an indemnification provision with a similar limitation. *Braegelmann v. Horizon Development Co.*, 371 N.W.2d 644, 645-46 (Minn. Ct. App. 1985). There, the court explained that the "to the extent caused" language "suggest[ed] a 'comparative negligence' construction under which each party [was] accountable 'to the extent' their negligence contribute[d] to the injury." *Id.* at 646. That court also examined the contract language: " 'regardless of whether it is caused in part by a party indemnified hereunder,' " and held the equivocal nature of the wording "fail[ed] under the strict construction standard." *Id.* Finally, the court concluded that "[u]nder the terms of this indemnification clause, the [indemnitee was] not contractually entitled to indemnification from the [indemnitor] to the extent damages were caused by the [indemnitee]'s own negligence." *Id.* at 646-47.

As we agree with the rationale of these other courts, we likewise hold that the "to the extent caused" language in an indemnification clause must be strictly construed as limiting an indemnitor's liability to cover the indemnitee's losses only to the extent the injuries were caused by the indemnitor. As such, we conclude that this contract's indemnification provision limits United Rentals' duty to indemnify only to the extent that United Rentals caused Kodera's accident. Since the jury found that United Rentals' negligence was not the proximate cause of Kodera's accident, and thus it was zero percent liable for negligence, we conclude that Wells Cargo was entitled to zero indemnification. Thus, the district court erred in determining that United Rentals was required to indemnify Wells Cargo for any portion of the $1,000,000 settlement.[5]

---

[5]We reject Wells Cargo's argument that, regardless of fault, the contractual indemnification provision requiring United Rentals to add Wells Cargo as an additional insured on certain liability insurance policies provided a basis for indemnification. Wells Cargo correctly notes that other courts have held that "when an indemnity agreement contains both hold harmless and insurance provisions, the parties clearly intend that [the indemnitee] will be indemnified against the consequences of its own negligence." *Myers v. ANR Pipeline Co.*, 959 F.2d 1443, 1448 (8th Cir. 1992) (alterations in original) (internal quotations omitted) (discussing the law of North Dakota); *see also United Corporation v. Beatty Safway Scaffold Co. of Oregon*, 358 F.2d 470, 478-79 (9th Cir. 1966); *Lafarge North America v. K.E.C.I. Colorado*, 250 P.3d 682, 686 (Colo. App. 2010); *Bridston by Bridston v. Dover Corp.*, 352 N.W.2d 194, 197 (N.D. 1984); *Mikula v. Miller Brewing Co.*, 701 N.W.2d 613, 625 (Wis. Ct. App. 2005). However, the indemnity provisions in these cases do not appear to expressly limit liability "to the extent" that any injury, claim or damage is "caused" by an indemnitor. *See, e.g., Bridston*, 352 N.W.2d at 196; *Mikula*, 701 N.W.2d at 616. Therefore, the cases cited by Wells Cargo are not controlling because even though United Rentals agreed to hold Wells Cargo

*The district court erred in determining that United Rentals was required to defend Wells Cargo and further erred in awarding Wells Cargo attorney fees*

Just as with United Rentals' duty to indemnify, the parties' indemnification provision limited United Rentals' duty to defend Wells Cargo against claims, losses, and damages relating to personal injury or other claims or damages "to the extent caused in whole or in part by the negligent acts or omissions or other fault of [United Rentals]." Notwithstanding the "to the extent caused" limitation, the district court held that United Rentals had a duty to defend Wells Cargo from the date of Wells Cargo's first tender of defense, regardless of the ultimate outcome. United Rentals argues that the district court erred in imposing a duty to defend because the contractual language limits its duty to defend to circumstances where United Rentals caused the injury and that until such causation is shown, there is no duty under the contract. According to United Rentals, "[t]o hold otherwise would force [it] to incur attorney[ ] fees in defense of claims it may not have caused, which is contrary to the express language." Based on a plain reading of the contract language, we agree.

"An indemnity clause imposing a duty to defend is construed under the same rules that govern other contracts." *Reyburn*, 127 Nev. at 344, 255 P.3d at 277. " 'The duty to defend is broader than the duty to indemnify' because it covers not just claims under which the indemnitor is liable, but also claims under which the indemnitor could be found liable." *Id.* (quoting *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 686, 99 P.3d 1153, 1158 (2004)). Generally, "[a] contractual promise to 'defend' another against specified claims clearly connotes an obligation of active responsibility, *from the outset,* for the promisee's defense against such claims." *Crawford v. Weather Shield Mfg. Inc.*, 187 P.3d 424, 431 (Cal. 2008), *discussed with approval in Reyburn,* 127 Nev. at 344-45, 255 P.3d at 277-78.

However, while the duty to defend is broad, it is not limitless. Unlike an insurance agreement, which typically requires an insurer

---

harmless and to name Wells Cargo as an insured on certain liability insurance policies that it procured, the contractual language explicitly limits United Rentals' obligation to the extent it caused any injury or damage. As such, we conclude that the addition of Wells Cargo to the insurance policies does not expand United Rentals' duty beyond the specifically construed contract language.

to defend all claims against the insured regardless of the claim's merit, *see Thibodaux v. Southern Natural Gas Co.*, 705 So. 2d 1287, 1289 (La. Ct. App. 1998), the duty to defend outlined in an indemnification provision is subject to strict construction of the contract language. *Prince v. Pacific Gas & Elec. Co.*, 202 P.3d 1115, 1120 (Cal. 2009) ("In the context of noninsurance indemnity agreements, if a party seeks to be indemnified for its own active negligence, *or regardless of the indemnitor's fault*, the contractual language on the point must be particularly clear and explicit, and will be construed strictly against the indemnitee." (internal quotations omitted)); *Crawford*, 187 P.3d at 430 ("Though indemnity agreements resemble liability insurance policies, rules for interpreting the two classes of contracts do differ significantly."); *Reyburn*, 127 Nev. at 344, 255 P.3d at 277 (contrasting "an insurer's duty to defend under an insurance policy" with "the duty to defend arising from an indemnity clause"). While "[a]mbiguities in a policy of insurance are construed against the insurer" because the insurer might be in a superior bargaining position to the insured, "[i]n noninsurance contexts, . . . it is the *indemnitee* who may often have superior bargaining power, and who may use this power unfairly to shift to another a disproportionate share of the financial consequences of its own legal fault." *Crawford*, 187 P.3d at 430. Accordingly, "unless specifically otherwise stated in the indemnity clause, an indemnitor's duty to defend an indemnitee is limited to those claims directly attributed to the indemnitor's scope of work and does not include defending against claims arising from . . . the indemnitee's own negligence." *Reyburn*, 127 Nev. at 345, 255 P.3d at 278.

Furthermore, as noted previously in this opinion, this court will not " 'attempt to increase the legal obligations of the parties where the parties intentionally limited such obligations.' " *Griffin v. Old Republic Ins. Co.*, 122 Nev. 479, 483, 133 P.3d 251, 254 (2006) (quoting *Senteney v. Fire Ins. Exchange*, 101 Nev. 654, 656, 707 P.2d 1149, 1150 (1985)). Additionally, "[e]very word [in a contract] must be given effect if at all possible." *Royal Indem. Co. v. Special Serv.*, 82 Nev. 148, 150, 413 P.2d 500, 502 (1966); *Ellison v. C.S.A.A.*, 106 Nev. 601, 603, 797 P.2d 975, 977 (1990) ("[A]bsent some countervailing reason, contracts will be construed from the written language and enforced as written."). Here, there is no clear and explicit language in the contract that directs United Rentals to defend Wells Cargo in claims where its own negligence is asserted. When the contractual language that does exist is strictly construed, United Rentals' duty to defend Wells Cargo is limited "to the extent" that United Rentals' "caused" Kodera's

accident.[6] Thus, because the jury found that United Rentals' negligence was not the proximate cause of Kodera's accident, United Rentals did not have a duty to defend Wells Cargo.[7]

In addition to seeking the recoupment of the $1 million it spent to settle Kodera's claims against it, Wells Cargo sought defense costs and attorney fees. However, as the plain language of the contract places no duty on United Rentals to defend Wells Cargo against its own negligence, and the duty to defend was limited to the extent that United Rentals was negligent, the district court erroneously awarded Wells Cargo most of its defense costs and attorney fees.[8] *See Reyburn*, 127 Nev. at 345, 255 P.3d at 279 (limiting the indemnitor's duty to pay defense costs to "those claims directly attributed to the indemnitor's scope of work"); *cf. Crawford*, 187 P.3d at 432 (explaining that with certain limitations, "[w]here the indemnitor has breached [its] obligation [to defend], an indemnitee who was thereby forced, against its wishes, to defend itself is entitled to reimbursement of the costs of doing so").

For the reasons discussed above, we reverse the judgment of the district court.[9]

SAITTA and PICKERING, JJ., concur.

---

[6]Wells Cargo points to a phrase in the indemnification provision that says the indemnitor must defend against claims "pertaining or allegedly pertaining to" the performance of the contract, and asks this court to interpret the meaning of this clause as extending the duty to defend to acts where United Rentals could have been negligent, even if it were not proven to be negligent. To the extent that this phrase contradicts the causal limitation, it is ambiguous, and therefore interpreted against Wells Cargo, who drafted the contract. *See Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215-16, 163 P.3d 405, 407 (2007).

[7]Wells Cargo argues that because United Rentals breached its duty to defend, it is entitled to indemnity regardless of fault. Specifically, Wells Cargo argues that regardless of the jury's verdict, Wells Cargo need only show that United Rentals was *potentially* liable because (1) an enforceable contract for defense and immunity exists, (2) a seasonable tender of defense was made with notice a settlement will be entered, and (3) the tender of defense was refused by United Rentals. Because we hold that United Rentals did not have a duty to defend Wells Cargo, we need not address the alleged breach of the duty.

[8]Accordingly, we need not address the parties' arguments concerning whether the district court must apportion the amount of attorney fees and defense costs that United Rentals owes Wells Cargo.

[9]Wells Cargo argues that the contract "requires United Rentals to hold Wells Cargo harmless, a contractual obligation that United Rentals never opposed, and now these words must be given effect." We conclude that the "hold harmless" requirement is subject to the same "to the extent caused" limitation as United Rentals' other duties, and United Rentals is thus not required to hold Wells Cargo harmless. *See Public Service Co. v. United Cable*, 829 P.2d 1280, 1283 (Colo. 1992) (stating that "indemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect" (internal quotations omitted)).